<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALCATEL-LUCENT USA INC., et al. *Plaintiffs*, v. SAMUEL BORLABI, et al., *Defendants*. | Civil Action No. 13-4543 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court by way of Alcatel-Lucent USA Inc. ("ALU"), Alcatel-Lucent Retirement Income Plan ("ALRIP"), and Lucent Technologies Inc. Pension Plan's ("LTPP") (collectively, "Plaintiffs") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendant Pamela Neeley ("Defendant"), Dkt. No. 195. For the reasons stated below, the motion is **GRANTED**.

**I.    BACKGROUND**

ALU is a Delaware corporation with its principal place of business in Murray Hill, New Jersey. Compl. ¶ 1, Dkt. No. 1. ALU is the named Plan Administrator for the LTPP, an employee benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). Id. ¶¶ 4-5. As the Plan Administrator, ALU is a fiduciary of the LTPP as defined by ERISA. Id. ¶ 5.

Defendant was a participant in the LTPP and had vested benefits with the LTPP. Id. ¶ 55.

1

Prior to 2012, Defendant received payment from the LTPP in satisfaction of the benefits to which Defendant was entitled from the LTPP.  Id. ¶ 56; Cert. of Susan Lear ("Lear Cert.") ¶ 5, Dkt. No. 195-3.  In November 2012, the LTPP mistakenly paid Defendant an additional amount of $233,691.92 that she was not entitled to.  Compl. ¶ 57; Lear Cert. ¶¶ 8-13.  The LTPP notified Defendant of the error and demanded return of the overpayment by written letters sent on January 16, 2013 and February 15, 2013.  Compl. ¶ 58; Lear Cert. Exs. H-I.  Defendant has not returned the overpayment.  Compl. ¶ 59; Lear Cert. ¶ 17.

Plaintiffs filed this lawsuit on July 26, 2013, seeking to recover the overpayment of LTPP assets from Defendant for breach of fiduciary duty under 29 U.S.C. 1109(a).  Dkt. No. 1. Defendant answered on October 21, 2013, Dkt No. 7, and was appointed pro bono counsel on May 19, 2014, Dkt. Nos. 79-80.  Defendant filed a motion to dismiss on August 15, 2014, which was denied.  Dkt. Nos. 96, 119.  Defendant filed an amended answer on April 3, 2015.  Am. Answer, Dkt. No. 124.  On October 27, 2015, Defendant failed to appear for a court-ordered settlement conference.  Dkt. No. 175.  Three days later, Defendant's appointed counsel filed a motion to withdraw due to "an irretrievable breakdown in the attorney-client relationship" and an inability to communicate with Defendant for the past three months.  Mot. to Withdraw ¶ 6, Dkt. No. 177. Counsel's motion to withdraw was granted on December 18, 2015 and Defendant was ordered to either file a letter of intent to appear pro se or to obtain new counsel by January 15, 2016.  Order Granting Mot. to Withdraw, Dkt. No. 188.  Defendant disregarded the order and has failed to appear or otherwise defend against this action since.  On February 4, 2016, the Court ordered that Defendant be found in default pursuant to Fed. R. Civ. P. 55(a).  Dkt. No. 192.  The Clerk of the Court entered default against Defendant the next day.  Id.  On March 22, 2016, Plaintiffs moved

for entry of default judgment.  Dkt. No. 195.

## II.  STANDARD OF REVIEW

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred."  Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendant have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages.  See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011).  Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Additionally, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default.  Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).

## III.  ANALYSIS

### A.  Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendant.  Subject matter jurisdiction here is present pursuant to 28 U.S.C. § 1331 as this

suit arises under the Employee Retirement Income Security Act of 1974.

The statutory and constitutional dimensions of personal jurisdiction have also been satisfied. See Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3rd Cir. 1985) ("Because personal jurisdiction necessarily addresses both the power of the court to create or affect legal interests and the rules of competence whereby adjudicatory authority is asserted, it is tested against both constitutional and statutory standards."). As to the statutory dimension, Fed. R. Civ. P. 4(e) provides that a Court has jurisdiction over a defendant if he is served "pursuant to the law of the state in which the district is located . . . [u]nless otherwise provided by federal law." In this case, ERISA provides for the Court's nationwide exercise of personal jurisdiction by permitting the service of process "in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Because Defendant was served with process within the United States, the statutory component of personal jurisdiction is satisfied.

The Court must also determine whether exercising jurisdiction over the defendant satisfies the due process clause of the Fifth Amendment. In doing so, the Court ascertains whether "'certain minimum contacts' exist between the non-resident defendant and the forum such 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Max Daetwyler, 762 F.2d at 293 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In this case, the relevant forum with which to assess Defendant's minimum contacts is the United States as a whole. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 (3d Cir. 2002). Where Congress "authoriz[es] nationwide service of process . . . the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." Pinker, 292 F.3d at 369; see also In re Fruehauf Trailer Corp., 250 B.R. 168, 199 (D. Del. 2000). Instead,

"a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts . . . ." Pinker, 292 F.3d at 369. Here, because all the acts underlying the alleged ERISA violations occurred within the United States, Defendant has sufficient minimum contacts with the United States to support personal jurisdiction in this Court.

The Court next assesses whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985).[1] In this case, this Court's exercise of personal jurisdiction over Defendant is fair and just. She participated in and received benefits from an employee benefit plan administered by a corporation operating in New Jersey. She also appeared in this case, answered, was appointed pro bono counsel, moved to dismiss, filed an amended answer with counterclaims, and opposed Plaintiffs' motions to compel discovery. The Court is satisfied that it can exercise personal jurisdiction over Defendant.

Finally, the Court finds that service was proper as Plaintiffs provided proof of service on Defendant at her dwelling in Whitwell, Tennessee. See Aff. of Service, Dkt. No. 14.

**B. Liability**

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, 908 F.2d at 1149. The Complaint pleads facts which, taken as true, establish Defendant's liability

---

[1] The Third Circuit has not yet addressed whether a fairness analysis is required under ERISA's nationwide service provision, but it has stated in dicta that such an analysis "would be appropriate." Pinker, 292 F.3d at 370 n.2; cf. Peay v. Bell South Med. Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000) (requiring a fairness analysis beyond a pure national contacts test). In an abundance of caution, the Court assumes a fairness analysis is required.

5

for breach of fiduciary duty under ERISA.[2]  To plead breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant is a plan fiduciary, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in losses to the plan.  See 29 U.S.C. § 1109; In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231, 235 (3d Cir. 2005); Kenseth v. Dean Health Plan, Inc., 610 F.3d 452, 464 (7th Cir. 2010).

First, Plaintiffs have pled facts that Defendant was a plan fiduciary.  A plan fiduciary is anyone who "exercises any authority or control respecting management or disposition of [plan] assets."  29 U.S.C. § 1002(21)(A).  "ERISA 'defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . .'"  Srein v. Frankford Trust Co., 323 F.3d 214, 220-21 (3d Cir. 2003) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993)).  "The plain language of this statute encompasses those who knowingly and unlawfully retain plan assets to which they are not entitled . . . ."  Carpenters Sav. Fund v. Kuloszewski, 2011 U.S. Dist. LEXIS 136014, at *2 (D.N.J. Nov. 28, 2011); see also Chao v. Day, 436 F.3d 234 (D.C. Cir. 2006) (holding that an insurance agent who misappropriated plan assets for himself was a fiduciary because he exercised control over plan assets); Int'l Painters & Allied Trades Indus. Pension Fund v. Aragones, 643 F. Supp. 2d 1329, 1336-37 (M.D. Fla. 2008) (finding that defendant was a fiduciary where she refused to return ERISA funds upon notice of overpayment).

In this case, Defendant became a plan fiduciary because she retained control over Plan assets she was not entitled to.  The LTPP mistakenly transferred $233,691.92 of its assets to Defendant's personal money market account, and she refused to return the assets after the LTPP

---

[2] Plaintiffs' other causes of action—including unjust enrichment—would not alter the damages in this case, so the Court does not analyze the sufficiency of those pleadings.

informed her of the erroneous transfer and requested repayment of the funds. Compl. ¶¶ 57-59, 106-08; Lear Cert. ¶¶ 8-17. In withholding the funds, Defendant continues to obstruct the LTPP's access to and use of the funds it overpaid to her. Accordingly, Plaintiffs have pled facts establishing that Defendant was a plan fiduciary.

Plaintiffs have also sufficiently pled the second and third prongs; that Defendant breached her fiduciary duty owed to the LTPP under 29 U.S.C. § 1104 by failing to return the erroneous overpayment and instead using it for her own benefit, Compl. ¶ 109, and that the breach resulted in losses to the plan in the amount of $233,691.92, Lear Cert. Exs. F-G. Therefore, Plaintiffs have sufficiently alleged a cause of action for breach of fiduciary duty under ERISA.

**C. Appropriateness of Default Judgment**

Next, the Court must consider (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. First, the Court concludes that Defendant lacks any meritorious defense. The showing of a meritorious defense is accomplished when "allegations of a defendant's answer, if established at trial, would constitute a complete defense to the action." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984) (citations omitted). To fulfill this requirement, Defendant's answer must have "alleged specific facts beyond simple denials or conclusory statements." Id. (citations omitted).

In this case, Defendant has failed to articulate any facts supporting a defense that would warrant the Court's abstention from entering default judgment. Defendant advanced ten affirmative defenses, including that "Plaintiffs' Complaint fails to state a legally cognizable cause of action," "Plaintiffs have failed to join a necessary party," and that Plaintiffs' claims are barred

7

by "the equitable doctrine of estoppel," "unclean hands," and "unconscionability." See Am. Answer at 16-17. None of these boilerplate defenses are supported by factual allegations. Accordingly, this factor weighs in favor of granting default judgment. See e.g., U.S. Bank Nat. Ass'n v. Smith, No. 14-4324, 2015 WL 437572, at *3 (E.D. Pa. February 3, 2015) (finding no meritorious defenses where the answer only "contains conclusory denials and boilerplate affirmative defenses").

Second, the Court finds that Plaintiffs will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief.

Third, Defendant acted culpably as she has been served with the Complaint, exhibited a history of dilatory behavior, and has failed to participate in this litigation since July 2015 in violation of multiple Court orders. See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability); Hritz v. Woma Corp., 732 F.2d 1178, 1184 (3d Cir. 1984) ("[A] trial judge [may] enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding.").

**D. Monetary Damages**

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, Plaintiffs must prove damages. See Comdyne I, 908 F.2d at 1149. If the damages are for a sum which can be made certain by computation, inquiry into extrinsic evidence is unnecessary. See id. Plaintiffs seek restitution in the amount of $207,645.17, measured by the amount of overpaid benefits that Defendant still had in her money market account after this lawsuit commenced. Plaintiffs prove this amount by providing documentation that a $233,691.92

8

pension commencement package was sent to Defendant in November 2012, Lear Cert. Exs. F-G, and that its transfer was erroneous because Defendant had already been paid all pension benefits to which she was entitled, id. Exs. B-D. Plaintiffs also prove that letters were sent to Defendant on January 16, 2013 and February 15, 2013 requesting return of the erroneous overpayment, id. Exs. H-I, and that Defendant still possessed $207,645.17 of the overpayment as of October 1, 2013, more than two months after the Complaint was filed, Cert. of Peter Knob, Esq. Ex. A at 70:19-71:4, Dep. of Pamela Neeley; Ex. B., Dkt. No. 195-2.

Because Defendant is a fiduciary of the plan, as discussed above, she is personally liable and must "make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). After reviewing the affidavits of Peter Knob, Esq. and Susan Lear, the Court is satisfied that the sum of the overpayment remaining in Defendant's money market account after Plaintiffs filed the Complaint is accurately calculated. Because the sum can be made certain by computation, "[n]o further evidence is required to substantiate this amount." Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC, No. 06-1581, 2007 WL 1674485, at *6 (D.N.J. June 8, 2007). Therefore, Plaintiffs are entitled to default judgment in the total amount of $207,645.17.

### E. Dismissal of Counterclaims

Finally, the Court dismisses Defendant's five counterclaims for failure to prosecute the action under Fed. R. Civ. P. 41(b). See, e.g., Link v. Wabash R. Co., 370 U.S. 626, 631 (1962) ("The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power.'"). When determining whether to dismiss a complaint pursuant to Rule 41(b), the Court must weigh six factors: (1) the extent of the party's personal responsibility, (2) prejudice to the adversary, (3) history of dilatoriness, (4) willful or bad faith conduct of an

attorney, (5) alternative sanctions, and (6) meritoriousness of a claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). However, where a Plaintiff has "indicated a desire to abandon her case," as has happened here, the district court need not engage in a detailed examination of the Poulis factors. Porten v. Auto Zone, No. 10-2629, 2011 WL 2038742, *2 (D.N.J. May 24, 2011) (citing Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir. 1994)).

The first factor supports dismissal. Defendant's disregard of multiple Court orders and subsequent refusal to participate in this case in any capacity culminated in her default more than four months ago. The Court recognizes that as a pro se litigant, Plaintiff is not represented by counsel and may encounter challenges that a represented party would not face. However, at the same time Plaintiff cannot contend that her failure to prosecute this matter is the fault of her counsel. See, e.g., Clarke v. Nicholson, 153 Fed. App'x 69, 73 (3d Cir. 2005), cert. denied, 548 U.S. 907 (2006) ("[U]nlike a situation in which a dismissal is predicated upon an attorney's error, the plaintiff here was pro se and directly responsible for her actions and inaction in the litigation.").

The second, third, and fourth factors also support dismissal. Defendant's inactivity, failure to comply with the Court's orders, and apparent abandonment of her claims has prejudiced Plaintiffs. Plaintiffs have been unable to prepare a defense of this matter because Defendant has failed to appear for scheduled conferences designed to move this case forward and has failed to contact the Court to reschedule. Moreover, her history of dilatoriness and bad faith are reflected in the fact that her counsel withdrew in December of last year due to her "resist[ing] participation in this matter since the outset," Mot. to Withdraw ¶ 6, and Defendant has since failed to retain new counsel or proceed pro se. See Ingris v. Borugh of Caldwell, No. 14-855, 2016 WL 241400, at *2 (D.N.J. Jan. 5, 2016), adopted by No. 14-855, 2016 WL 237097 (D.N.J. Jan. 20, 2016).

10

Finally, the fifth and sixth factors also favor dismissal. Dismissal is warranted because alternative sanctions such as fines are often inappropriate or impractical when a party is proceeding pro se; there is no plausible reason to believe that such a sanction would spur Defendant to resume litigating this case. See Emerson v. Thiel College, 296 F.3d 184, 191 (3d Cir. 2002). Nor do Defendant's claims appear to be meritorious. However, in light of Defendant's complete withdrawal from the case, the Court cannot adequately assess their validity. Therefore, the meritoriousness factor is neutral. See Porten, 2011 WL 2038742, *3.

On balance, the Poulis factors weigh in favor of dismissal. Accordingly, Defendant's counterclaims are dismissed with prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, Dkt. No. 195, is **GRANTED**, and Defendant's counterclaims are dismissed with prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). An appropriate order accompanies this opinion.

Dated: June 16, 2016                                  */s Madeline Cox Arleo*
                                                      **MADELINE COX ARLEO**
                                                      **United States District Judge**